UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-04778-CAS-ASx | Date | September 28, 2026 |
| Title | Samantha Payan, et al., v. County of Los Angeles, et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Ashley Conlogue<br>Michaela GoodarzilRad | Ernie Chen |

**Proceedings:** ZOOM HEARING RE: NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 19, filed August 7, 2026)

## I. INTRODUCTION

On May 4, 2026, plaintiffs Samantha Payan and Elizabeth Payan (collectively, "Plaintiffs") filed this action against defendants County of Los Angeles (the "County"), Sheriff Robert G. Luna ("Luna"), in his individual capacity; Christina R. Ghaly, M.D. ("Ghaly"), in her individual capacity; Timothy Belavich, Ph.D. ("Belavich"), in his individual capacity; and Does 1-50, inclusive (collectively, "Defendants"). See Dkt. 1 ("Compl."). Plaintiffs assert ten claims for relief. Plaintiffs assert their first six claims against all defendants except for the County, respectively, pursuant to 42 U.S.C. § 1983 ("§ 1983"): (1) conditions of confinement/medical care in violation of the Fourteenth Amendment Due Process Clause; (2) interference with parent/child relationship in violation of the Fourteenth Amendment Due Process Clause; (3) state created danger in violation of the Fourteenth Amendment Due Process Clause; and (4) special relationship. Id. Plaintiffs also assert claims pursuant to § 1983 for (5) supervisory liability, against Luna, Ghaly, Belavich, and Does 41-50, inclusive; and (6) municipal liability, against the County. See id. Plaintiffs also filed the following claims against all defendants: (7) negligence; (8) violation of Cal. Gov't Code § 845.6; (9) violation of California's Bane Act, Cal. Civ. Code § 52.1; and (10) violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, and violation of California's Unruh Act, Cal. Civ. Code § 51. Id.

On July 17, 2026, the County, Luna, Ghaly, and Belavich (the "County defendants") filed a motion to dismiss plaintiffs' complaint. Dkt. 14.

On July 23, 2026, plaintiffs filed the operative first amended complaint. See Dkt. 15, Dkt. 18-1 ("FAC").[1] Plaintiffs re-assert all claims for relief set forth in their original complaint. See FAC.

On August 7, 2026, the County defendants filed the instant motion to dismiss plaintiffs' FAC. Dkt. 19 ("Mot."). On September 4, 2026, plaintiffs filed an opposition. Dkt. 20 ("Opp."). On September 14, 2026, the County defendants filed a reply. Dkt. 21 ("Reply").

On September 28, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiffs allege the following in their first amended complaint:

### A. The Parties

Plaintiff Samantha Payan is an individual who at all relevant times is and was a resident of Castaic, California. FAC ¶ 2. Samantha Payan is the child and successor-in-interest of Jessie Payan (the "Decedent"). Id. Samantha Payan is decedent's only issue and next of kin. Id. ¶ 4.

Plaintiff Elizabeth Payan is an individual who at all relevant times is and was a resident of El Paso, Texas. Id. ¶ 3. Elizabeth Payan is the mother of the decedent and was dependent on the decedent. Id.

Decedent does not have a surviving spouse. Id. ¶ 5.

Defendant County of Los Angeles is and was at all relevant times a duly organized public entity under the laws of the State of California. Id. ¶ 6. The Los Angeles County

[1] On July 24, 2026, plaintiffs filed a notice of errata, stating that their electronically filed FAC included various formatting anomalies. See Dkt. 18. Plaintiffs attached a true and correct copy of their FAC to the notice. See Dkt. 18-1. Throughout this Order, the Court references this later-filed version of the FAC. See id.

Sheriff's Department ("LASD"), the Los Angeles County Twin Towers Correctional Facility, the Los Angeles County Men's Central Jail ("MCJ"), and the Los Angeles County Department of Health Services (collectively, the "Los Angeles County Department of Health Services Integrated Correctional Health Services" or "ICHS") are public agencies that operate under the auspices of the County. Id. At all times relevant to this action, MCJ was operated, managed, and controlled by the LASD and ICHS. Id. At all times relevant to this action, County was the employer of defendants Luna, Ghaly, Belavich, and Does 1-50, inclusive. Id. ¶ 10.

Defendant Luna was at all relevant times the Sheriff of LASD. Id. ¶ 7. Luna was in charge of the custodial operations in MCJ and responsible for the management and control of LASD actions and inactions at MCJ. Id. Specifically, Luna was responsible for the the selection, promotion, supervision, training, discipline and retention of agents and employees working within the LASD at MCJ, and for the implementation of policies and procedures within the LASD at MCJ regarding incidents similar to and including the one at issue in this action. Id.

Defendant Ghaly was the Director of the Los Angeles County Department of Health Services. Id. ¶ 8. Defendant Belavich was the Director of the Los Angeles County Department of Health Services, Correctional Health Services. Id. ¶ 9. Ghaly and Belavich were in charge of the health services operations in Los Angeles County, including at MCJ. Id. ¶¶ 8, 9. Specifically, Ghaly and Belavich were responsible for the management and administration of health services of the ICHS; for the selection, promotion, supervision, training, discipline and retention of health workers working within the ICHS, including counselors, nurses, doctors, physician assistants, health staff and supervisors; for the production of inmate health records and medical files; and for the implementation of health policies and procedures at ICHS. Id.

Does 1-50, inclusive, are LASD deputies presently unknown to plaintiffs. Id. ¶ 10.

### B. Decedent's Incarceration and Subsequent Death

Prior to the events of August 12-15, 2025, decedent had been incarcerated for a period of time in the County jail system. See id. ¶ 19. On information and belief, decedent participated in the County's Substance Treatment and Re-Entry Transition ("S.T.A.R.T") Program or a substantially similar correctional substance abuse treatment program during this earlier period of incarceration. Id. ¶ 19. On further information and

belief, the County maintained records concerning decedent's prior incarceration, including records relating to his participation in substance abuse treatment programming and correctional health services. Id. ¶ 20. Those records were available to the County and its correctional health personnel. Id. Accordingly, the County and its correctional health providers knew or reasonably should have known of decedent's prior substance use disorder, his elevated risk of substance-related medical complications, and his need for appropriate screening, evaluation, and treatment. Id. ¶¶ 19-20.

On or about August 12, 2025, decedent was arrested by officers of the Los Angeles Police Department and thereafter placed into the custody of the County jail system. Id. ¶ 23.

On or about August 13, 2025, decedent was processed through the Inmate Reception Center. Id. ¶ 26. Decedent should have undergone intake procedures pursuant to County policies and procedures, including medical and mental health screening and drug screening, before being referred for housing in general population. Upon information and belief, Decedent was not properly processed through the Inmate Reception Center. Id.

On or about August 14, 2025, decedent was transferred to and housed in general population at MCJ. Id. ¶ 28. Upon information and belief, decedent did not undergo the County's intake medical pre-screening as required under LASD Custody Division Manual Policies 2-00/050.00 and 5-03/030.00. Id. In the alternative, the intake medical pre-screening process was not properly performed in that decedent was not properly screened for severe substance use disorder or properly assessed for withdrawal risk through validated screening protocols, and the County did not require personnel conducting intake to receive adequate training regarding the recognition of emergent drug-related medical conditions. Id.

Decedent was thereafter housed within MCJ without appropriate medical observation, monitoring, or follow-up. Id. ¶¶ 28, 35. On information and belief, LASD and ICHS employees and staff did not conduct safety checks or did not conduct safety checks properly as required under LASD Custody Division Manual Policy 4-11/030.00. Id. ¶ 39.

At all relevant times, defendants were aware and had knowledge of the violations of and non-adherence to the LASD Custody Division Manual Policies 2-00/050.00, 5-03/030.00, and 4-11/030.00 (collectively, the "LASD policies"). Id. ¶¶ 32, 39.

On or about the early morning hours of August 15, 2025, decedent experienced a serious and obvious medical emergency while housed in his cell. Id. ¶ 37. At approximately 4:04 a.m., custody staff heard an inmate repeatedly yell, "Help me," from within the housing area, and ignored prior requests for help. Id. Custody staff thereafter approached decedent's cell and observed him lying on the floor in obvious medical distress. Id. When addressed, decedent attempted to respond but was unable to do so. Id. At approximately 4:50 a.m., decedent was pronounced dead. Id.

Upon information and belief, decedent's condition developed and worsened prior to being discovered. Id. ¶ 44. Upon further information and belief, once defendants discovered decedent in obvious medical distress, defendants failed to summon or provide adequate and effective medical intervention sufficient to prevent decedent's death. Id. ¶ 45.

The Los Angeles County Department of Medical Examiner later determined that decedent's cause of death was methamphetamine intoxication, with the manner of death classified as accidental. Id. ¶ 43. Methamphetamines are not permitted in MCJ. Id. ¶ 44. Defendants' acts and omissions, including their failure to properly screen for drugs, prevent the introduction or presence of drugs within the facility, monitor decedent's condition, and timely respond to decedent's medical needs were a substantial factor in causing decedent's death. Id. ¶ 46.

### C. Policies Related to Medical Care and Protection of Incarcerated Persons

At all relevant times, defendants Luna, Ghaly, and Belavich had final policymaking authority related to medical policies and procedures in the County jail system. See id. ¶¶ 48-50. Luna, Ghaly, Belavich, and Does 1-50 were personally responsible for the approval, promulgation, and implementation of the LASD Policies. Id. ¶ 51.

Prior to August 15, 2025, defendants Luna, Ghaly, Belavich, and Does 41-50, inclusive, had actual notice of a severe and pervasive pattern of drug-related medical emergencies occurring at County jails, including MCJ. Id. ¶ 52. These defendants

received or had access to official County reports documenting repeated in-custody deaths resulting from drug-related medical emergencies, including LASD Inmate In-Custody Death Reports identifying twelve accidental drug-related deaths during 2023, eight accidental drug-related deaths occurring in 2024, and eight additional accidental drug-related deaths occurring before decedent’s death in 2025. Id. ¶ 63; see also id. ¶¶ 60-62 (detailing the deaths of Matthew Martinez, Tourmaria Foreman, and Daejon Morgan by accidental overdose while in County custody between 2018 and 2024).

Moreover, on or about October 29, 2024, defendant Luna made the following public statement after an inmate’s suspected overdose: “We have a zero tolerance [policy] for any narcotics in any of our custody facilities, so there will be a very thorough investigation about how, what, when, why and all that because we need to figure out how this happens so we can prevent it from happening again.” Id. ¶ 53.

Defendants were also on actual and constructive notice that individuals entering the County jail system frequently suffer from substance use, intoxication, withdrawal, and other acute medical conditions. Id. ¶ 54.

Despite this knowledge, defendants have maintained policies, *sub rosa* customs and practices that fail to adequately screen inmates for drug intoxication and related medical risks at intake, allow drugs and drug paraphernalia to enter and circulate within MCJ, and permit delayed and inadequate responses to inmates experiencing medical distress. Id. ¶¶ 55-58. These systemic failures have resulted in a pattern of preventable deaths within the Los Angeles County jail system. Id. ¶ 59.

Defendants Luna, Ghaly, Belavich, and Does 41-50, inclusive, have also continued to allow violations of LASD Policies without requiring standardized withdrawal screening, validated screening tools, or additional training concerning substance-related medical emergencies or safety checks. Id. ¶ 64.

As a direct and proximate result of these policies, customs, and practices, decedent was not properly screened for intoxication or medical risk, was not adequately monitored while in custody, and did not receive timely and appropriate medical care when he began experiencing a medical emergency. Id. ¶ 70.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

### A. Standing

County defendants (hereinafter "defendants") argue that Elizabeth Payan ("Elizabeth") lacks standing to assert survival and wrongful death claims in this action. Opp. at 6. First, defendants argue that Elizabeth lacks standing to assert survival claims because Samantha Payan is the only successor in interest who may bring such a claim pursuant to Cal. Civ. Proc. Code §§ 377.30 and 377.32. Id. Second, defendants argue that Elizabeth lacks standing to assert wrongful death claims because the complaint fails to allege adequate facts to establish standing pursuant to Cal. Civ. Proc. Code § 377.60(b)(1). Id. at 6-7. Defendants argue that the "FAC omits facts describing the nature, duration, or amount of any such dependency." Id. at 3.

In opposition, plaintiffs concede that Elizabeth lacks standing to assert survival claims. Opp. at 2. However, plaintiffs argue that the complaint alleges that Elizabeth was decedent's mother and a "dependent" of the decedent, thereby adequately pleading standing under California's wrongful death statute. Id. at 2-3 (citing Armijo v. Miles, 127 Cal. App. 4th 1405, 1422 (2005)).

In reply, defendants contend that Armijo "did not hold or otherwise endorse that a 'rote recitation' of the statutory requirements is sufficient to establish standing under California's wrongful death statute." Reply at 2.

"A plaintiff seeking to bring a wrongful death claim bears the burden of pleading and proving his or her standing to do so." Soto v. BorgWarner Morse TEC Inc., 239 Cal. App. 4th 165, 188 (2015), as modified (Aug. 20, 2015). The right to bring a wrongful death claim is limited to the individuals described in Cal. Civ. Proc. Code § 377.60. Phraner v. Cote Mart, Inc., 55 Cal. App. 4th 166, 168 (1997). Section 377.60(b)(1) provides that a decedent's parents may bring a wrongful death claim "if they were dependent on the decedent." Cal. Civ. Proc. Code § 377.60(b)(1). "'Dependence' refers to financial rather than emotional dependency." Foster v. City of Fresno, 392 F. Supp. 2d 1140, 1146 (E.D. Cal. 2005). Specifically, a parent "must show that they 'were *actually* dependent, to some extent, upon the decedent for the *necessaries* of life.'" Perry v. Medina, 192 Cal. App. 3d 603, 610 (987), abrogated on other grounds by Saldana v. Globe-Weis Sys. Co., 233 Cal. App. 3d 1505 (1991) (quoting Hazelwood v. Hazelwood, 57 Cal. App. 3d 693, 698 (1976)).

Plaintiffs allege that Elizabeth "was the mother of [d]ecedent and was dependent on [d]ecedent." FAC ¶ 3. These allegations fall short of the specificity required to adequately plead standing pursuant to Cal. Civ. Proc. Code § 377.60(b)(1). See, e.g., Gonzalez v. City of Anaheim, No. CV 10-4660, 2010 WL 11463113, at *3 (C.D. Cal. Sept. 20, 2010) ("[The complaint] alleges that [p]laintiff 'suffered loss of support' as the result of Gonzalez's death. However, these general and vague allegations are not sufficient . . . ." (citation modified)); Sandoval ex rel. B.U. v. City of Nat'l City, No. 22CV1657, 2023 WL 1453157, at *5 (S.D. Cal. Feb. 1, 2023) ("[T]he complaint does not allege that Margarita, decedent's mother, was dependent on the decedent for the 'necessaries of life.' Thus, Margarita fails to allege standing . . . ." (citation modified)); cf. V.R. v. Cnty. of San Bernardino, No. EDCV 19-1023, 2019 WL 8221080, at *3 (C.D. Cal. Oct. 4, 2019) (finding plaintiff's allegation that she was "financially dependent on [decedent], to some extent, for the necessities of life" to be sufficient).[2]

Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiffs' claims brought by Elizabeth Payan, with leave to amend.

### B. Individual § 1983 Claims

Defendants argue that each of plaintiffs' § 1983 claims fail as asserted against defendants Luna, Ghaly, and Belavich (collectively, the "Individual Defendants"). Mot. at 7-13. First, defendants argue that all § 1983 claims asserted against the individual defendants fail because plaintiffs have not adequately pled each defendant's "[p]ersonal [p]articipation" in the alleged constitutional violations. Id. at 7-9. As to plaintiffs' second claim for relief, defendants argue that plaintiffs have not alleged "affirmative, targeted governmental conduct directed at the familial relationship" that "shocks the conscience." Id. at 10-11. As to plaintiffs' third claim for relief, defendants argue that

[2] The Court does not find Armijo to be instructive. Armijo discussed a provision of § 337.60 that does not apply here, and the case did not clearly address the adequacy of the pleadings as it relates to their precise substance. See Armijo, 127 Cal. App. 4th at 1421-22. Moreover, Armijo is minimally persuasive in that it was decided prior to the Supreme Court's rulings in Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. See, e.g., L & S Enters. v. Sentinel Ins. Co., No. EDCV 16-1841, 2016 WL 10592208, at *2 (C.D. Cal. Oct. 24, 2016) (declining to rely on a decision that approved of conclusory pleadings because the decision predated Twombly and Iqbal).

the state-created danger doctrine does not apply to pretrial detainees. Id. at 11-12. Even if the doctrine did apply, defendants argue that plaintiffs have not adequately pled that the individual defendants took any "affirmative acts" that gave rise to a state-created danger. Id. at 12. As to plaintiffs' fourth claim, defendants argue that the special relationship doctrine simply sets forth a duty owed by the state to a pretrial detainee, not an "independently enforceable right." Id. at 13.

In opposition, plaintiffs argue that the complaint adequately alleges the individual defendants' "knowledge of the unconstitutional conditions and culpable actions of their subordinates," as well as the individual defendants' failure to act on that knowledge. Opp. at 4-5. Plaintiffs further argue that these failure-to-act allegations sufficiently support plaintiff Samantha Payan's second claim for interference with a parent/child relationship. Id. at 6. Finally, plaintiffs argue that they adequately pled facts to establish the state-created danger and special relationship exceptions to the general rule that "a state is not liable for its omissions" pursuant to § 1983. Id. at 6-7 (quoting Munger v. Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000)).

In reply, defendants distinguish the instant case from Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). Reply at 3-4. Defendants argue that plaintiffs' complaint does not reflect the level of specificity of Starr's "exemplar allegations." Id. Defendants largely reiterate their arguments that plaintiffs fail to (1) allege any conduct targeting the familial relationship or (2) rebut defendants' argument that plaintiffs' state-created danger and special relationship claims are duplicative of the plaintiffs' first claim for relief. Id.

"[V]iolations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018). To prevail on their claim for unconstitutional conditions of confinement and inadequate medical care, plaintiffs must therefore show that (1) the individual defendants made an intentional decision with respect to the conditions under which the decedent was confined; (2) those conditions put the decedent at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to mitigate that risk, even though a reasonable official would have appreciated the high degree of risk involved; and (4) by not taking such measures, the defendant caused the decedent's injuries. See id. at 1125.

To prevail on a claim for unconstitutional interference with the parent/child relationship, a plaintiff must plausibly allege that the defendant's conduct "shock[s] the conscience" or "offend[s] the community's sense of fair play and decency." Rosenbaum v. Washoe Cnty., 663 F.3d 1071, 1079 (9th Cir. 2011). A prison official's deliberate indifference will "shock the conscience" if "the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013).

Plaintiffs also allege Due Process violations under the special relationship and state-created danger doctrines. Although the Due Process Clause typically does not confer a right to the state's protection from harm, the Ninth Circuit has recognized two exceptions to this rule. Martinez v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019). First, "a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect." Id. Second, the state-created danger doctrine may require the state to "protect a plaintiff that it affirmatively places in danger by acting with deliberate indifference or a known or obvious danger." Id. (citation modified).

Pursuant to § 1983, supervisory liability may be imposed if (1) the supervisor was personally involved in the constitutional deprivation or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1207-08 (citation modified).

The Court finds that plaintiffs adequately state their § 1983 claims brought against the individual defendants. As to plaintiffs' first claim for unconstitutional conditions of confinement and inadequate medical care, plaintiffs "make[] detailed factual allegations" that are "neither 'bald' nor conclusory'." See Starr, 652 F.3d at 1216. As in Starr, plaintiffs "specifically allege[] numerous incidents in which inmates in Los Angeles County jails have been killed . . . because of the culpable actions of the subordinates" of the individual defendants. FAC ¶¶ 60-62; Starr, 652 F.3d at 1216. Plaintiffs also allege

that the individual defendants had actual notice of prior drug-related deaths. FAC ¶¶ 52-53, 63 (describing defendants' notice based on LASD Inmate In-Custody Death Reports identifying twenty-eight in-custody accidental drug-related deaths since 2023); Starr, 652 F.3d at 1216. Plaintiffs also allege that defendants had notice of the systematic deficiencies that led to these drug-related deaths, but "did not take action to protect inmates under [their] care despite the dangers, created by the actions of his subordinates, of which he had been aware." See Starr, 652 F.3d at 1216; FAC ¶¶ 64-69. Finally, plaintiffs plead that these deficiencies were "a moving force" behind decedent's alleged constitutional deprivations and subsequent death. FAC ¶¶ 70-71. As in Starr, these factual allegations "plausibly suggest that [the individual defendants] acquiesced in the unconstitutional conduct of his subordinates, and [were] thereby deliberately indifferent to the danger posed" to the decedent. Starr, 652 F.3d at 1216. Moreover, contrary to defendants' suggestion, there is no requirement that plaintiffs set forth "a long list" of "exemplar allegations," as defendants characterize the pleadings described in Starr. See Mot. at 2, 3 n.2. Instead, plaintiffs must only set forth facts that give rise to a plausible basis for relief. Moss, 572 F.3d at 969. Plaintiffs have met that standard here.

Furthermore, plaintiffs plausibly allege that the County and correctional health providers knew or reasonably should have known that decedent had a prior substance use disorder and an elevated risk of substance-related medical complications. See FAC ¶¶ 19-20. Plaintiffs also allege that defendants had actual or constructive notice that individuals entering County jail facilities have access to drugs while in custody. See id. ¶ 54. Plaintiffs further allege that one or more Doe defendants ignored decedent's cries for help and failed to provide decedent with necessary medical care, conduct timely safety checks, or take other preventative measures. See, e.g., id. ¶¶ 10, 37. Finally, plaintiffs allege that these actions and omissions were a causal factor in decedent's death. See, e.g., id. ¶ 75. These allegations are sufficient at the pleading stage. See Barnaba v. Cnty. of San Diego, No. 23-cv-01622, 2024 WL 4896590, at *3-5 (S.D. Cal. Nov. 26, 2024) (finding that similar allegations provide fair notice as to plaintiff's claims of dangerous conditions of confinement and denial of medical care).[3]

[3] Defendants argue that plaintiffs' allegations "on information and belief" fail to establish a plausible claim for relief. See Mot. at 9. However, "[t]he Twombly plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or

Plaintiffs' second claim for relief for familial interference also survives on the basis of plaintiffs' allegations of defendants' deliberate indifference. See Kelly v. Cnty. of Orange, No. SACV2001531, 2022 WL 266182, at *5 (C.D. Cal. Jan. 4, 2022) (declining to dismiss a familial interference claim because plaintiffs had adequately alleged prison officials' deliberate indifference in relation to other claims); cf. Est. of Matus v. County of Riverside, No. 5:23-CV-00506, 2025 WL 5242268, at *11 (C.D. Cal. June 3, 2025) (finding that a triable issue of fact as to defendants' deliberate indifference gave rise to a triable issue of fact as to whether their conduct "shocks the conscience"); M.D. v. Cnty. of San Bernardino, No. 5:22-CV-01357, 2025 WL 3256463, at *20 (C.D. Cal. Nov. 14, 2025) (same). Consistent with the Ninth Circuit's observation that a "prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner," Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013), plaintiffs allege that defendants had "ample opportunity for actual deliberation," see FAC ¶ 83. And despite defendants' argument to the contrary, officials' failures to act may give rise to a familial interference claim. See, e.g., Matus, 2025 WL 5242268, at *11 (finding a triable issue of fact on a familial interference claim involving officials' failure to timely summon medical aid).

Plaintiffs also adequately state a claim pursuant to the state-created danger doctrine for similar reasons. Courts in this District have declined to dismiss state-created danger claims where, as here, plaintiffs allege that officials failed to protect a detained individual from harm. See Desoucy v. Cnty. of San Bernardino, No. EDCV 23-1287, 2025 WL 3501918, at *6 (C.D. Cal. Oct. 30, 2025) (finding that plaintiffs adequately state a claim based on allegations that defendants failed to provide urgent medical care and allowed custodial staff to perform improper safety checks for detained individuals); see also Tater v. City of Huntington Beach, No. 820CV01772, 2023 WL 4291656, at *21 (C.D. Cal.

---

where the belief is based on factual information that makes the inference of culpability plausible." Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)) (citation modified). Here, plaintiffs' allegations on information and belief as to the contents of County records, decedent's program participation while in custody, and defendants' conduct as it relates to the decedent's intake and subsequent death at MCJ involve information that is within defendants' control. Moreover, plaintiffs allege that they were unable to fully acquire relevant information through public records requests. See FAC ¶¶ 33, 45.

May 8, 2023) (crediting allegations that officials' "refusal to provide the decedent with psychiatric or psychological care" may have increased the risk of danger to the decedent).

Moreover, plaintiffs allege that defendants "completely severed [d]ecedent from his outside support systems [and] his private medical providers" in the context of their special relationship claim. FAC ¶ 100. Construing the complaint in plaintiffs' favor, such allegations give rise to the inference that defendants' conduct placed decedent in "greater danger than he was in before his arrest," since decedent could no longer access his own medical care. See Essex Cnty. of Imperial, No. 3:24-CV-00763-L-VET, 2025 WL 525110, at *4 (S.D. Cal. Feb. 18, 2025) (nurse's decision not to administer insulin, among other conduct, supported state-created danger claim because the decedent could have used his own insulin medication prior to arrest); see also Est. of McCrary v. Victorville Police Dep't, No. 5:23-CV-02602, 2025 WL 2370825, at *3 (C.D. Cal. July 21, 2025) (finding that plaintiffs adequately stated a state-created danger claim where but-for the official's conduct, the "family would have delivered [decedent] to the paramedics or taken him to this hospital").

Plaintiffs also adequately state a claim for relief with respect to the special relationship exception. A special relationship exists "when a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being." Henry A. v. Willden, 678 F.3d 991, 998 (9th Cir. 2012). Here, there is no dispute that the decedent was in state custody at the time of the alleged constitutional violations. Accordingly, the special relationship exception applies. Cf. Hikes v. Cnty. of Napa, No. 25-cv-06241, 2025 WL 3483086, at *2 (N.D. Cal. Dec. 3, 2025) (finding that the special relationship doctrine did not apply because plaintiff was no longer in defendants' custody at the time of injury).

Finally, as to plaintiffs' supervisory liability claims, the Court finds that plaintiffs set forth adequate allegations against Luna, Ghaly, Belavich, and Does 41-50, inclusive (the "Supervisory Defendants"). Plaintiffs allege that the supervisory defendants allowed violations of LASD Policy to persist despite their knowledge of drug-related accidental deaths similar to decedent's death, failed to implement additional training or tools, and failed to properly supervise, investigate, or instruct subordinates with respect to detained individuals' medical care, housing, and monitoring. FAC ¶¶ 52, 63-64, 108-113. These allegations sufficiently state a claim for supervisory liability. See, e.g., Frary v. Cnty. of Marin, No. C 12-3928, 2012 WL 6218196, at *8 (N.D. Cal. Dec. 13, 2012) (finding that

similar allegations adequately set forth a claim for supervisory liability); Est. of Johnson v. Cnty. of Sacramento, No. 2:23-CV-01304, 2024 WL 279137, at *4-5 (E.D. Cal. Jan. 25, 2024) (same).

To the extent that plaintiffs' § 1983 claims are duplicative, the Court concludes that dismissal is not necessary at this stage. See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' § 1983 claims against the individual defendants.

### C. Municipal § 1983 Claim

Defendants argue that defendants' alleged failure to enforce LASD policy is insufficient to state a Monell claim because such a theory fails to contend that the policy itself is unconstitutional. See Mot. at 14. Defendants also argue that plaintiffs do not adequately allege a claim based on a well-settled custom because the FAC has only identified "three prior deaths across a six-year span" along with "statistics of prior deaths occurring between 2023-2025." Id. at 15. Finally, defendants argue that plaintiffs have failed to allege specific training deficiencies. Id. at 16.

In opposition, plaintiffs argue that they need not set forth more than "a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Opp. at 9-10 (citing Shah v. Cnty. of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986); Karim Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 624 (9th Cir. 1988)). Plaintiffs contend that the complaint sets forth adequate allegations to support a ratification-based theory of Monell liability. Id. at 11.

In reply, defendants argue that the case law plaintiffs cite in support of a lesser pleading standard for Monell claims predates Twombly and Iqbal and is therefore minimally instructive. Reply at 6-7. Defendants also argue that plaintiffs set forth too few facts to sustain its ratification theory. Id. at 7.

Pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), a government entity may be held liable under § 1983 if a "policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011)

(citing Monell, 436 U.S. at 694). A policy or custom may be shown through: (1) a longstanding practice or custom which constitutes the "standard operating procedure" of the municipality; (2) a decision or action by a municipal official who has final policymaking authority; or (3) the ratification of a subordinate's decision or action by an official with final policymaking authority. Avalos v. Baca, 596 F.3d 583, 588 (9th Cir. 2010).

"'Evidence of inaction' by the municipality 'can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality,' despite an official policy prohibiting the unconstitutional act." Mitchell v. Cty. of Contra Costa, 600 F. Supp. 3d 1018, 1028 (N.D. Cal. 2022) (quoting Hunter v. Cty. of Sacramento, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011)). "In inaction cases, the plaintiff must show, first, that the policy amounts to deliberate indifference to the plaintiff's constitutional right. This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation. Second, the plaintiff must show that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) (citation modified).

The Ninth Circuit has set forth a two-step inquiry for assessing Monell claims at the pleading stage. First, allegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. A.E. ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).

Here, the Court finds that the plaintiffs' Monell claim provides fair notice and plausibly states entitlement to relief. Plaintiffs allege the existence of multiple specific customs, policies, and practices, including those related to the County's failure to adequately screen inmates for drug use, intoxication, and other acute medical risks at intake; failure to implement appropriate monitoring of inmates at risk of medical emergency; and failure to adequately train correctional and medical personnel to recognize, assess, and appropriately respond to substance use disorders and related emergencies. FAC ¶¶ 115, 118. Plaintiffs further allege that these policies, customs, and practices were a moving force behind decedent's deprivation of his constitutional rights.

See, e.g., id. ¶¶ 31, 37, 71, 121-122; Mateos-Sandoval v. Cnty. of Sonoma, 942 F. Supp. 2d 890, 900 (N.D. Cal. 2013) (finding that allegations "specifying the content of the policies, customs, or practices the execution of which gave rise to [p]laintiffs' constitutional injuries . . . are sufficient to give fair notice and to enable the opposing party to defend itself effectively").

Moreover, plaintiffs allege three other accidental drug-related in-custody deaths between 2018 and 2024 that arose from similar conduct, including the County's failures to conduct proper medical screenings at intake, conduct welfare checks, and respond to medical emergencies. See FAC ¶¶ 60-62. Plaintiffs also allege the existence of LASD reports identifying twenty-eight accidental drug-related deaths in LASD facilities between 2023 and decedent's death in 2025, giving rise to the inference that at least some of those deaths are attributable to similar County conduct. Id. ¶ 63. These alleged incidents support the premise that the County was aware of, and deliberately indifferent to, the alleged unconstitutional customs or practices. See Mitchell, 600 F. Supp. 3d at 1030-31 (concluding the same based on fifteen alleged lawsuits setting forth similar allegations against defendants within seventeen years of the incident at issue).

Because the Court finds that plaintiffs adequately state a Monell claim based on a custom or practice, the Court need not assess the merits of plaintiffs' other Monell theories. See Cabanillas v. City of S. Gate, No. 2:24-CV-08027, 2026 WL 699396, at *2 (C.D. Cal. Mar. 12, 2026).

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' Monell claim pursuant to § 1983.

### D. Negligence and Violation of Cal. Gov't Code § 845.6

Defendants argue that all defendants are immune from liability pursuant to plaintiffs' negligence claim. Specifically, defendants argue that the County is immune pursuant to Cal. Gov't Code § 844.6(a)(2), which grants immunity to public entities for injuries to prisoners. Mot. at 17. Defendants note that an exception to this grant of immunity is set forth in Cal. Gov't Code § 845.6, which permits liability for failure to summon medical care. Id.

Defendants further argue that the individual defendants are immune pursuant to Cal. Gov't Code § 820.2, which grants immunity to officials for high-level discretionary

governmental activity. Id. at 18. Even if individual defendants were not immune, defendants argue that plaintiffs have not pled facts that plausibly establish causation. Id. at 17-18.

In opposition, plaintiffs argue that they have adequately asserted a claim against the County pursuant to Cal. Gov't Code § 845.6. Opp. at 13-15. Plaintiffs also argue that the individual defendants are not immune from suit because Cal. Gov't Code § 820.2 does not immunize conduct on an "operational level[] of decision making." Id. at 15.

In reply, defendants argue that plaintiffs have conceded that their negligence claim is duplicative of their separately pled § 845.6 claim. Reply at 7-8. Defendants reiterate their argument that the individual defendants' relevant conduct involves discretionary acts, not operational decision-making. Id. at 8.

California Government Code § 844.6(a)(2) provides that a public entity is not liable for "[a]n injury to any prisoner." Cal. Gov't Code § 844.6. However, § 845.6 provides an exception to this rule. See id. Pursuant to § 845.6,

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov't Code § 845.6. To prevail on a claim pursuant to § 845.6, a plaintiff must establish that (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care. Jett v. Penner, 439 F.3d 1091, 1099 (9th Cir. 2006). Section 845.6 provides only "a limited cause of action against a public entity for its employees' failure to *summon* immediate medical care only. The statute does not create liability of the public entity for malpractice in furnishing or obtaining that medical care. Castaneda v. Dep't of Corr. & Rehab., 212 Cal. App. 4th 1051, 1070 (2013).

California Government Code § 820.2 provides that, aside from statutory exceptions, "a public employee is not liable for an injury resulting from his act or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| Case No. | 2:26-cv-04778-CAS-ASx | Date | September 28, 2026 |
|---|---|---|---|
| Title | Samantha Payan, et al., v. County of Los Angeles, et al. | | |

omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. "Courts must distinguish between public employees' policy decisions and their operational, or ministerial, decisions." A.E. ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 639 (9th Cir. 2012). "[G]overnment defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who consciously balanced risks and advantages." Id. (citation modified).

The Court agrees with defendants that plaintiffs' negligence claim is barred as asserted against the County. See, e.g., Est. of Pinacho v. Cnty. of Los Angeles, No. 2:26-CV-03431, 2026 WL 2373324, at *9 (C.D. Cal. July 9, 2026) (dismissing a negligence claim premised on a prisoner's in-custody injury).

As to plaintiffs' negligence claim asserted against the individual defendants, the Court finds it improper to resolve the question of immunity on the pleadings. See Est. of Van Tine ex rel. Van Tine v. Cnty. of San Diego, No. 25-CV-1403, 2026 WL 800561, at *11 (S.D. Cal. Mar. 23, 2026) ("Regarding [d]efendants' claims for immunity under Government Code § 820.2, this cannot generally be resolved at the motion to dismiss stage."); A.E., 666 F.3d at 640 ("It would be odd indeed if a plaintiff included in a [c]omplaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants."). Here, plaintiffs' negligence claims are based on the individual defendants' failure to implement and enforce LASD Policy and supervisory defendants' negligence in selecting, hiring, training, supervising, and evaluating subordinates. See FAC ¶¶ 130-133. Given that these claims do not, on their face, involve defendants' basic policy decisions, the Court declines to dismiss this claim on the basis of immunity at this stage. See Est. of Adams v. Cnty. of San Bernardino, No. EDCV 24-1447, 2024 WL 5413155, at *8 (C.D. Cal. Nov. 26, 2024) ("Section 820.2's immunity does not apply where a plaintiff 'challenges the implementation of existing policies, not the policies themselves.'" (quoting Turano v. Cnty. of Alameda, No. 17-CV-06953, 2019 WL 501479, at *3 (N.D. Cal. Feb. 8, 2019))).

Moreover, plaintiffs adequately state a negligence claim against the individual defendants. In addition to plaintiffs' allegations of the individual defendants' negligent conduct, see FAC ¶¶ 130-133, plaintiffs adequately allege that these defendants had a "duty to provide reasonable security and render access and delivery of adequate medical care." Id. ¶ 133. Moreover, plaintiffs adequately plead that that these defendants'

negligence caused decedent's serious injury resulting in death. Id. ¶¶ 44-46, 134-136. Accordingly, plaintiffs' negligence claim against the individual defendants survives.

As to plaintiffs' claim for failure to summon medical care pursuant to § 845.6, the Court finds that plaintiffs adequately state a claim for relief against the County and the Doe defendants that were present at or around the time of decedent's death. Plaintiffs allege that custody staff summoned medical care, but only after "ignor[ing] prior requests for help." FAC ¶ 37. Plaintiffs further allege that, upon information and belief, decedent was in medical distress prior to the time that custody staff heard a 4:04 am call for help. Id. Plaintiffs further allege that defendants either were aware or should have been aware of decedent's medical distress prior to 4:04 am if they had properly performed safety checks. Id. Accordingly, the Court finds that plaintiffs allege a plausible claim for relief against the County, which employed the Doe employees who allegedly "failed to provide [d]ecedent with necessary medical care, [or] failed to properly conduct timely safety checks." See id. ¶ 10; see also Desoucy v. Cnty. of San Bernardino, No. EDCV 23-1287, 2023 WL 9316536, at *10 (C.D. Cal. Dec. 1, 2023) (finding that plaintiffs adequately alleged a § 845.6 claim where the county's employees summoned medical care but failed to do so "immediate[ly]"). However, plaintiffs fail to "allege any facts to support" that defendants Luna, Ghaly, and Belavich were "aware of [plaintiff's] injuries or need for care" or were "in any way involved in requesting or failing to request care." Id. Accordingly, plaintiffs have failed to state a plausible claim pursuant to § 845.6 against defendants Luna, Ghaly, and Belavich. See id.

Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiffs' negligence claim against the County. The Court **DENIES** defendants' motion to dismiss plaintiffs' negligence claim against defendants Luna, Ghaly, and Belavich.

The Court **DENIES** defendants' motion to dismiss plaintiffs' § 845.6 claim against the County. The Court **GRANTS** defendants' motion to dismiss plaintiffs' § 845.6 claim against defendants Luna, Ghaly, and Belavich, with leave to amend.

### E. Bane Act

Defendants argue that the plaintiffs' Bane Act claim should be dismissed because plaintiffs fail to allege an affirmative act of coercion independent from the alleged constitutional violation. Mot. at 20. Defendants contend that, contrary to plaintiffs' suggestion, failure to provide adequate medical care is not a "threat, intimidation, or

coercion” within the scope of the Bane Act. Id. Defendants also argue that Cal. Gov’t Code § 844.6 insulates the County from liability under the Bane Act. Id. at 20-21.

In opposition, plaintiffs argue that their pleadings adequately state the elements of a claim under the Bane Act for deliberate indifference to medical needs. Opp. at 16-17 (citing M.H. v. County of Alameda, 90 F. Supp. 3d 889 (N.D. Cal. 2013); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). Plaintiffs also argue that pursuant to Cal. Civ. Code § 52.1(n), section 844.6 does not insulate the County from liability. Id. at 17.

In reply, defendants argue that plaintiffs failed to set forth a response to defendants’ argument that plaintiffs failed to allege coercion independent of the alleged constitutional violation. Reply at 9.

“The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion. Section 52.1 provides a cause of action for violations of a plaintiff's state or federal civil rights committed by threats, intimidation, or coercion.” Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation modified). Pursuant to § 52.1(n), section 844.6 shall not apply to any cause of action brought “directly against a public entity that employs a peace officer or custodial officer, under this section.” Cal. Civ. Code § 52.1(n).

As an initial matter, the Court agrees with plaintiffs that Cal. Gov’t Code § 844.6 does not bar plaintiffs’ Bane Act claim against the County. See Cal. Civ. Code § 52.1(n); Ramirez v. Cnty. of San Diego, No. 24-CV-366-MMA-BLM, 2024 WL 2219012, at *11 (S.D. Cal. May 15, 2024) (denying a motion to dismiss a Bane Act claim against a county defendant because “the California legislature revoked public entities’ immunity for Bane Act violations, including for injuries to prisoners under California Government Code § 844.6”).

Second, despite defendants’ argument to the contrary, “the Bane Act does not require the ‘threat, intimidation or coercion’ element of the claim to be transactionally independent from the constitutional violation alleged.” Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). “When a Bane Act claim is based on alleged federal constitutional violations, as here, plaintiffs may rely on the same allegations to prove both that the defendant deprived them of a constitutional right and threatened, intimidated, or coerced them.” Cravotta v. Cnty. of Sacramento, 717 F. Supp. 3d 941,

964 (E.D. Cal. 2024) (citing Reese, 888 F.3d at 1043). However, "the claim must also rest on factual allegations that would allow an inference [that] the defendant had a specific intent to violate the plaintiff's rights." Id. A showing of defendant's reckless disregard for a person's constitutional rights is sufficient to demonstrate "specific intent." Id.

Although the California Supreme Court has not yet ruled on the showing required to establish a Bane Act claim premised on defendants' deliberate indifference, "[m]ultiple district courts have adopted the position that 'a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs adequately states a claim for relief under the Bane Act' because deliberate indifference claims extend far beyond ordinary tort claims and have been 'associated with affirmatively culpable conduct.'" Id. (quoting M.H. v. County of Alameda, 90 F. Supp. 3d 889, 898-99 (N.D. Cal. 2013) (listing cases) (citation modified). As discussed above, plaintiffs here make an adequate showing of defendants' deliberate indifference to decedent's medical needs. See id.

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' Bane Act claim.

### F. ADA and Unruh Act[4]

Defendants argue that the Unruh Act applies only to discrimination by "business establishments," and therefore all defendants fall outside of the scope of the statute. Id. at 21-23. Defendants also argue that neither the ADA nor Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, provides a cause of action to sustain plaintiffs'

[4] Plaintiffs' tenth claim for relief is pled pursuant to the ADA and the Unruh Act, but the allegations thereunder also mention Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. It is unclear the extent to which plaintiffs intended to file their tenth claim pursuant to Section 504. Because neither party significantly engages with this potential claim in briefing aside from defendants' argument that there is no cause of action available against individuals under Section 504, the Court does not discuss Section 504 in depth here. The Court remarks, however, that Title II of the ADA and Section 504 "are interpreted coextensively," and therefore any Section 504 claim would likely fail or survive on the same basis as plaintiffs' ADA claims. See Payan v. Los Angeles Cnty. Coll. Dist., 11 F.4th 729, 737 (9th Cir. 2021).

claims against individual defendants in their individual capacities. Mot. at 21. Defendants further argue that decedent does not fall within the ADA's definition of "individual with disability" because the statute explicitly excludes those who "currently engag[e] in the illegal use of drugs, when the covered entity acts on the basis of such use." Id. at 22 (citing 42 U.S.C. § 12210(a)). Defendants argue that to the extent that individuals with diagnosed substance use disorders qualify for protection pursuant to the ADA, plaintiffs have failed to allege sufficient facts to establish that defendants were on notice of the decedent's substance use disorder. Id.

In opposition, plaintiffs concede that the County is not a business establishment for purposes of the Unruh Act. Opp. at 18. However, plaintiffs argue that the Unruh Act applies to "all persons," and therefore their Unruh Act claims asserted against the individual defendants survive. Id. (citing Marina Point, Ltd. v. Wolfson, 30 Cal.3d 721, 736 (1982)). Plaintiffs also argue that decedent qualifies for certain ADA protections. Id. at 18-19. Specifically, plaintiffs argue that the ADA prohibits the denial of health services, or services provided in connection with drug rehabilitation, on the basis of current illegal drug use so long as the individual is otherwise entitled to those services. Id. (citing 42 U.S.C. § 12210(c)). Accordingly, plaintiffs argue that "[d]ecedent's alleged methamphetamine use does not, standing alone, eliminate his status as an individual protected by the ADA where the challenged conduct concerns the provision of medical care." Id. at 20 (citing Taylor v. Wexford Health Sources, Inc., 737 F. Supp. 3d 357 (S.D.W.V. 2024); Cox v. City of Boston, 734 F. Supp. 3d 173 (D. Mass. 2024)).

In reply, defendants argue that plaintiffs' cited authority on the ADA's protections for individuals engaging in the illegal use of drugs is distinguishable from the case at hand. Reply at 10.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001),

as amended on denial of reh'g (Oct. 11, 2001). Section 12210(a) of the ADA provides that, in general, "the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a). Section 12210(c) states, however, that "an individual shall not be denied health services, or services provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs if the individual is otherwise entitled to such services." Id. § 12210(c).

California's Unruh Act provides that "[a]ll persons within [California] no matter what their . . . disability [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. An entity qualifies as a business establishment for purposes of the Unruh Act when it "appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise." See Warfield v. Peninsula Golf & Country Club, 10 Cal. 4th 594, 622 (1995).

The Court finds that plaintiffs allege a plausible claim for relief pursuant to the ADA. First, plaintiffs allege that decedent's qualifying disability was on the basis of "drug intoxication" or "substance use disorder." FAC ¶ 150. Defendants appear to concede that, at least under some circumstances, substance use disorders may qualify an individual for protection pursuant to Title II of the ADA. See Mot. at 22 ("[A] diagnosed substance use disorder . . . *might* qualify as a disability under the ADA"). The Court observes that, in general, the ADA "protects individuals who have successfully completed or are participating in a supervised drug rehabilitation program and are no longer using illegal drugs." See Collings v. Longview Fibre Co., 63 F.3d 828, 831-32 (9th Cir. 1995); 42 U.S.C. § 12210(b). In other words, § 12210(b) sets forth one set of circumstances in which substance abuse disorders may qualify as a disability giving rise to ADA protections. See, e.g., Hernandez v. Hughes Missile Sys. Co., 362 F.3d 564, 570 (9th Cir. 2004) (finding a genuine issue of fact as to whether a covered entity discriminated against an individual on the basis of "his past record of addiction").

Although there is little case law interpreting § 12210(c), this Court observes that several district courts treat the provision as giving rise to a second set of circumstances in which substance abuse disorders may be treated as a qualifying disability. See, e.g., Smart v. Strafford Cnty., No. 2024 DNH 095, 2024 WL 4751400, at *11 (D.N.H. Nov. 12, 2024) (suggesting that decedent's "drug addiction" sufficed as a qualifying disability

where "plaintiffs allege that [decedent] was denied health services" pursuant to § 12210(c)); Gather Church v. Lewis Cnty., 814 F. Supp. 3d 1154, 1166 (W.D. Wash. 2025) (finding that plaintiffs had established a likelihood of success on an ADA claim alleging the denial of health services on the basis of discrimination against individuals with substance abuse disorders pursuant to § 12210(c)); Taylor v. Wexford Health Sources, Inc., 737 F. Supp. 3d 357, 376 (S.D.W. Va. 2024) (rejecting the defendant's "argument that it is entitled to summary judgment on the basis that [plaintiff] is excluded from ADA protection because of his illegal drug use" on the basis of § 12210(c)); see also Cox v. City of Bos., 734 F. Supp. 3d 173, 182 n.9 (D. Mass. 2024) ("Drug addiction is a disability covered by Title II, see 28 C.F.R. § 35.108(b)(2), and Title II's implementing regulations prohibit a public entity from denying health services 'to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services.'"). Accordingly, the Court declines to dismiss plaintiffs' ADA claim for failure to adequately allege a qualifying disability.

As to defendants' contention that plaintiffs do not adequately allege that defendants "were on notice of [decedent's] diagnosed substance use disorder separate from the acute intoxication," Mot. at 22, the Court disagrees. The FAC adequately alleges that the County had "actual or constructive knowledge of [d]ecedent's substance use disorder," including through the County's "own correctional records" and decedent's prior participation in the County's correctional substance abuse treatment program. See FAC ¶¶ 19-20, 159.

With respect to the remaining elements of their ADA claim, plaintiffs adequately state a claim for relief. As discussed above, plaintiffs adequately allege that decedent was denied access to medical care. Moreover, a showing of "deliberate indifference" establishes the intentional discrimination element of a Title II claim for damages. Duvall, 260 F.3d at 1139. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." Id. For the same reasons discussed elsewhere in this Order, plaintiffs make an adequate showing of defendants' deliberate indifference for the purposes of their ADA claim.

As to plaintiffs' Unruh Act claims, the Court agrees with defendants that plaintiffs fail to state a claim. Plaintiffs concede that the County is not subject to liability pursuant to the Unruh Act. See Opp. at 18. The Court finds that the individual defendants are also

not subject to liability for violations of the Unruh Act. Although plaintiffs argue that "all persons" are covered by the Unruh Act, their cited authority appears to refer to the individuals who are *protected by* the Unruh Act, not those who are subject to suit thereunder. See Marina Point, Ltd. v. Wolfson, 30 Cal. 3d 721, 730 (1982) ("[T]he antidiscrimination provisions of the Unruh Act are not confined only to a limited category of 'protected classes' but rather protect 'all persons' from any arbitrary discrimination by a business establishment."). Instead, courts in this Circuit have dismissed Unruh Act claims brought against both public entities and individuals where the claims pertained to alleged discriminatory conduct in prisons and jails. See, e.g., Garland v. Cal. Dep't of Corr. & Rehab., No. 2:23-CV-0418, 2025 WL 36015, at *5 (E.D. Cal. Jan. 6, 2025); Walker v. Sec'y of Corr., No. 221CV0364, 2023 WL 2333555, at *3 (E.D. Cal. Mar. 2, 2023), report and recommendation adopted, No. 2:21-CV-00364, 2023 WL 3380445 (E.D. Cal. May 11, 2023). Accordingly, this Court finds that plaintiffs have failed to state a plausible claim for relief pursuant to the Unruh Act.

Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiffs' ADA claims against the County. The Court **GRANTS** defendants' motion to dismiss plaintiffs' ADA claims against individual defendants.

Accordingly, the Court **GRANTS** defendants' motion to dismiss as to plaintiffs' claims pursuant to the Unruh Act.

## V. CONCLUSION

Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiffs' claims brought by Elizabeth Payan, with leave to amend.

The Court **DENIES** defendants' motion to dismiss plaintiffs' first six claims pursuant to 42 U.S.C. § 1983.

The Court **GRANTS** defendants' motion to dismiss plaintiffs' negligence claim against the County, with prejudice. The Court **DENIES** defendants' motion to dismiss plaintiffs' negligence claim against defendants Luna, Ghaly, and Belavich.

The Court **DENIES** defendants' motion to dismiss plaintiffs' Cal. Gov't Code § 845.6 claim against the County. The Court **GRANTS** defendants' motion to dismiss plaintiffs' Cal. Gov't Code § 845.6 claim against defendants Luna, Ghaly, and Belavich, with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-04778-CAS-ASx | Date | September 28, 2026 |
| Title | Samantha Payan, et al., v. County of Los Angeles, et al. | | |

The Court **DENIES** defendants’ motion to dismiss plaintiffs’ Bane Act claim.

The Court **DENIES** defendants’ motion to dismiss as to plaintiffs’ ADA claims against the County. The Court **GRANTS** defendants’ motion to dismiss plaintiffs’ ADA claims against individual defendants, with prejudice.

Accordingly, the Court **GRANTS** defendants’ motion to dismiss plaintiffs’ claims pursuant to the Unruh Act, with prejudice.

In the event that plaintiffs choose to amend their pleadings with respect to their claims that are dismissed without prejudice, plaintiffs’ second amended complaint is due within twenty-one (21) days of the date of this order.

IT IS SO ORDERED.

| | | | |
|---|---|---|---|
| | 00 | : | 10 |
| Initials of Preparer | CMJ | | |